## **AFFIDAVIT OF PETER MILLIGAN**

I, Special Agent Peter Milligan, depose and state as follows:

## **INTRODUCTION**

1. I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been employed as an ATF Special Agent since April 2009 and am currently assigned to the Boston Group VI Field Office. As an ATF Special Agent, my duties include the investigation of violations of laws related to firearms trafficking, firearm possession by felons and other prohibited persons, and the use of firearms in drug trafficking/violent crimes, as well as the investigation of laws related to explosives violations and incendiary (arson) fires.

2. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I have participated in numerous classes of in-service training relating to firearms/narcotics trafficking investigations and arson and explosives investigations. I have been the affiant and/or participated in the execution of numerous state and federal search and arrest warrants pertaining to violations of the federal firearms, narcotics, arson, and explosives laws. I have participated in dozens of investigations relating to the illegal acquisition and sales of firearms and narcotics. During those investigations, I have participated in surveillance, the purchase of firearms, the purchase of narcotics, the execution of search warrants, and I have interviewed witnesses, suspects, and informants. Through my law enforcement training, participation in undercover purchases of firearms, surveillance of firearms traffickers, interviews of suspects, and participation in search warrants and Title III electronic surveillances, I am familiar with the methods that are most commonly used by unlawful firearms traffickers and people dealing in firearms without a Federal Firearms License. Based on my training and experience as an ATF Special Agent, I am familiar with the federal firearms laws.

3. This affidavit is based on a multi-agency investigation into the criminal activities of Lucas FERREIRA-DA SILVA. The agencies involved in the investigation include: the ATF, the Department of Homeland Security, Homeland Security Investigations ("HSI"), and the Revere Police Department.

4. Pursuant to this investigation, there is probable cause to believe that Lucas FERREIRA-DA SILVA ("FERREIRA-DA SILVA") has committed violations of federal law, by engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). This affidavit is being submitted in support of an application for a criminal complaint charging FERREIRA-DA SILVA with violation of 18 U.S.C. § 922(a)(1)(A), (the "Target Offense").

5. During this investigation, a cooperating witnesses ("CW-1") made controlled purchases of commercially manufactured firearms, Privately Made Firearms ("PMF") (sometimes referred to as "ghost guns"), and commercially manufactured ammunition from FERREIRA-DA SILVA. Unlike commercially manufactured firearms, a PMF or "ghost gun" does not have a serial number. Based on my training and experience, I am aware that a PMF satisfies the definition of "firearm" under 18 U.S.C. § 922(a)(1)(A).

6. CW-1 has requested that their identity not be revealed for fear of reprisal or harm to their physical safety. Based on these fears, CW-1 is seeking protection from law enforcement to include possible relocation. I am aware of the identity of CW-1 and have met with them personally on numerous occasions. CW-1 has provided accurate, truthful and reliable information to law enforcement, including the ATF, HSI, and local police departments, in the past and continues to do so. CW-1 has no criminal history. CW-1 is presently receiving monetary and immigration benefits from the ATF.

7. The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from cooperating witnesses, public records, database checks, and other investigations. The dates and times in this affidavit are approximate. Because this affidavit is being submitted for the limited purpose of supporting issuance of a criminal complaint for FERREIRA-DA SILVA, I have not presented every fact learned during the investigation but only that information necessary to fully support probable cause for the criminal complaint.

## **PROBABLE CAUSE**

8. Federal investigators have been involved in the investigation of FERREIRA-DA SILVA for approximately two months. In September 2024, CW-1 provided information to ATF regarding FERREIRA-DA SILVA trafficking firearms from Connecticut into Massachusetts. Thereafter, CW-1, working with law enforcement, made several controlled purchases of commercially manufactured firearms, Privately Made Firearms ("PMF"), and commercially manufactured ammunition from FERREIRA-DA SILVA.

<u>October 3, 2024 – Taurus Pistol Deal</u>

9. Beginning on or about October 2, 2024, CW-1 was in contact with FERREIRA-DA SILVA regarding the sale of a Taurus pistol. FERREIRA-DA SILVA sent CW-1 a photograph of the Taurus pistol and quoted the price of $1600. After some negotiation, FERREIRA-DA SILVA agreed on the price of $1600 for the Taurus pistol and a $100 delivery fee to transport the firearm from Connecticut to Massachusetts. FERREIRA-DA SILVA agreed to meet CW-1 at the Northgate Shopping Center, located at 300 Squire Road, Revere, MA ("Northgate Shopping Center"), on October 3, 2024, to conduct the transaction.

10.     Prior to the meeting on October 3, ATF agents searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video, and official government funds to purchase the firearm. CW-1 was under constant surveillance by law enforcement throughout the transaction. CW-1 arrived at the Northgate Shopping Center and parked in the lot. CW-1 contacted FERREIRA-DA SILVA to advise of his/her arrival. FERREIRA-DA SILVA informed CW-1 that he was already parked in the parking lot. FERREIRA-DA SILVA directed CW-1 to his location in the parking lot. FERREIRA-DA SILVA was on foot standing next to a black Toyota Prius. CW-1 pulled in and parked the UC vehicle on the passenger side of the black Toyota Prius. FERREIRA-DA SILVA reached into the black Toyota Prius and retrieved a black bag from inside of the vehicle. FERREIRA-DA SILVA then entered the front passenger side of the UC vehicle with CW-1. FERREIRA-DA SILVA removed a pistol from the black bag and provided it to CW-1. FERREIRA-DA SILVA conducted the sale of the Taurus pistol in exchange for $1700.

11.     After leaving the meeting location, CW-1 was kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 provided agents with a Taurus, G3C, 9mm pistol, with an obliterated serial number, and an additional 9mm pistol magazine. Agents searched CW-1 for contraband and found none. I have reviewed the recording of the meeting which confirmed CW-1's account of the transaction.

October 4, 2024 – Taurus Pistol Deal

12.     On or about October 4, 2024, FERREIRA-DA SILVA agreed to meet CW-1 at the Northgate Shopping Center and sell a Taurus pistol and an unknown pistol. Prior to the meeting, ATF agents searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video, and official

government funds to purchase the firearm. CW-1 was under constant surveillance by law enforcement throughout the transaction. CW-1 arrived at the Northgate Shopping Center and parked in the lot. CW-1 contacted FERREIRA-DA SILVA to advise of his/her arrival. FERREIRA-DA SILVA informed CW-1 that he was currently in traffic and sent a screen shot of his GPS location and estimated time of arrival. FERREIRA-DA SILVA arrived in the parking lot in a gray Honda Accord Sedan and parked next to the UC vehicle. FERREIRA-DA SILVA exited the passenger seat of the Honda carrying a black bag. FERREIRA-DA SILVA then entered the front passenger side of the UC vehicle with CW-1. FERREIRA-DA SILVA removed a pistol from the black bag and provided it to CW-1. FERREIRA-DA SILVA told CW-1 that he decided to keep the second firearm for his own protection. FERREIRA-DA SILVA conducted the sale of the single Taurus pistol in exchange for $1700.

13. After leaving the meeting location, CW-1 was kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 provided agents with a Taurus, G2S, 9mm pistol, with an obliterated serial number, one round of 9mm ammunition, and an additional 9mm pistol magazine. Agents searched CW-1 for contraband and found none. I have reviewed the recording of the meeting which confirmed CW-1's account of the transaction.

October 11, 2024 –Pistol and Shotgun Deal

14. On or about October 11, 2024, FERREIRA-DA SILVA agreed to meet CW-1 at the Northgate Shopping Center and sell a Glock pistol, a shotgun, and an AR-15 style rifle. Prior to the meeting, ATF agents searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video, and official government funds to purchase the firearms. CW-1 was under constant surveillance by law enforcement throughout the transaction. CW-1 arrived at the Northgate Shopping Center and

parked in the lot. CW-1 contacted FERREIRA-DA SILVA to advise of his/her arrival. CW-1 waited in the lot for a couple hours waiting for the arrival of FERREIRA-DA SILVA. During the wait, CW-1 and FERREIRA-DA SILVA were in contact several times. FERREIRA-DA SILVA advised CW-1 that he was stuck in traffic and on his way to the meeting with the firearms. FERREIRA-DA SILVA sent CW-1 photographs of the firearms inside of the vehicle. A short time later, FERREIRA-DA SILVA arrived in a white Mitsubishi SUV and parked next to the UC vehicle. FERREIRA-DA SILVA was the front passenger of the white Mitsubishi SUV. FERREIRA-DA SILVA got out of the white Mitsubishi SUV and opened the rear passenger door of the UC vehicle. FERREIRA-DA SILVA reached into the white Mitsubishi SUV and removed the firearms that were wrapped in clothing. FERREIRA-DA SILVA placed the firearms wrapped in clothing on the rear seat of the UC vehicle and closed the rear door. FERREIRA-DA SILVA then entered the front passenger side of the UC vehicle with CW-1. Both CW-1 and FERREIRA-DA SILVA reached into rear compartment of the UC vehicle to inspect the firearms. CW-1 retrieved the pistol to inspect it, while FERREIRA-DA SILVA re-assembled the barrel portion of the shotgun. FERREIRA-DA SILVA explained that he was unable to get the AR-15 style rifle to sell during this transaction. FERREIRA-DA SILVA conducted the sale of a pistol and shotgun in exchange for $3700. During the meeting, CW-1 and FERREIRA-DA SILVA had a brief conversation about future and past firearms transactions. CW-1 asked FERREIRA-DA SILVA who is obliterating the serial numbers on the firearms that he has sold to him/her. FERREIRA-DA SILVA advised CW-1 that he needs to obliterate the serial numbers because the firearms were purchased by him. FERREIRA-DA SILVA explained that he purchased the firearms at the store and the paperwork executed for the firearms is in his name.

15. After leaving the meeting location, CW-1 was kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 provided agents with a Glock 43X, 9mm pistol, with an obliterated serial number, a black plastic pistol holster, and a Maverick, model 88, 12-gauge shotgun, bearing serial number MV0995737. Agents searched CW-1 for contraband and found none. I have reviewed the recording of the meeting which confirmed CW-1's account of the transaction.

<u>October 23, 2024 – Three Firearm Deal</u>

16. On or about October 23, 2024, FERREIRA-DA SILVA agreed to meet CW-1 at the Northgate Shopping Center to sell a sawed-off shotgun, an AR-15 style rifle, and a pistol. Prior to the meeting, ATF agents searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video, and official government funds to purchase the firearms. CW-1 was under constant surveillance by law enforcement throughout the transaction. CW-1 arrived at the Northgate Shopping Center and parked in the lot. Moments later, FERREIRA-DA SILVA arrived in a white Mitsubishi SUV and parked on the passenger side of the UC vehicle. FERREIRA-DA SILVA got out of the white Mitsubishi SUV and opened the rear passenger door of the UC vehicle. FERREIRA-DA SILVA retrieved a black trash bag from the white Mitsubishi SUV and placed it on the rear seat of the UC vehicle. FERREIRA-DA SILVA entered the front passenger side of the UC vehicle with CW-1. Both CW-1 and FERREIRA-DA SILVA reached into the rear of the UC vehicle and removed the firearms from the black plastic trash bag. FERREIRA-DA SILVA explained that he had to take the sawed-off shotgun and the AR-15 rifle apart so they would fit into the bag for transport. FERREIRA-DA SILVA conducted the sale of the sawed-off shotgun, AR-15 style rifle, and pistol in exchange for $5500.

17. After leaving the meeting location, CW-1 was kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 provided agents with: (1) a Privately Made Firearm (PMF), 9mm pistol; (2) a Smith & Wesson, M&P 15-22, .22 caliber rifle, bearing serial number LBH4110; and (3) a Smith & Wesson, model 1000P, 12-gauge sawed-off shotgun, bearing serial number FB00668. Agents searched CW-1 for contraband and found none. I have reviewed the recording of the meeting which confirmed CW-1's account of the transaction.

October 28, 2024 – Three Firearm Deal

18. On or about October 28, 2024, FERREIRA-DA SILVA agreed to meet CW-1 at the Northgate Shopping Center and sell an AR-15 style rifle and four pistols. Prior to the meeting, ATF agents searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video, and official government funds to purchase the firearms. CW-1 was under constant surveillance by law enforcement throughout the transaction. CW-1 arrived at the Northgate Shopping Center and parked in the lot. Moments later, FERREIRA-DA SILVA arrived in a blue Toyota Corolla and parked on the driver's side of the UC vehicle. FERREIRA-DA SILVA was the driver and sole occupant of the blue Toyota Corolla. FERREIRA-DA SILVA got out of the driver's side of the blue Toyota Corolla and retrieved a cardboard rifle box from the trunk. FERREIRA-DA SILVA opened the rear driver's side door of the UC vehicle and placed the cardboard rifle box on the rear seat. FERREIRA-DA SILVA entered the front passenger side of the UC vehicle. CW-1 reached into the rear compartment and opened the cardboard rifle box. CW-1 observed an AR-15 rifle and two pistols inside of the cardboard rifle box. FERREIRA-DA SILVA informed CW-1 that he did not pick up the other two pistol because they were too old. FERREIRA-DA SILVA conducted the sale of the AR-15 rifle and two pistols in exchange for $6300.

19.     After leaving the meeting location, CW-1 was kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 provided agents with: (1) an American Tactical Imports, Omni Hybrid Maxx P3P, 5.56 caliber rifle, bearing serial number NS417832; (2) a Glock 27, .40 caliber pistol, bearing serial number FGL216; (3) a Geisler, Privately Made Firearm (PMF), 9mm pistol; and (4) an additional .40 caliber pistol magazine. Agents searched CW-1 for contraband and found none. I have reviewed the recording of the meeting which confirmed CW-1's account of the transaction.

20.     Agents were able to locate post arrest booking photographs related to the February 3, 2024, Malden Police Department arrest of Lucas Da Silva, where Lucas Da Silva was charged with Assault and Battery and Strangulation or Suffocation. When comparing the post arrest booking photographs of Lucas Da Silva to the individual in the recorded controlled firearms transactions, I believe that the individuals are the same, Lucas FERREIRA-DA SILVA.

21.     Based on a query of the ATF Federal Licensing System, it has been determined that FERREIRA-DA SILVA does not possess a license to engage in the business of dealing firearms.

## CONCLUSION

22. Based on the information set forth above, I have probable cause to believe that Lucas FERREIRA-DA SILVA engaged in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A). Accordingly, I respectfully request that the Court issue the attached criminal complaint and warrant for the arrest of FERREIRA-DA SILVA.

*Peter Milligan /by Paul G. Levenson*
Peter Milligan
Special Agent, ATF

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

HON. PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

on this __7th__ day of November, 2024